UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Callins and White
Argued at Alexandria, Virginia

DANIEL A. MARTINEZ-NOLASCO

MEMORANDUM OPINION* BY
v.      Record No. 1596-22-2      JUDGE DOMINIQUE A. CALLINS
NOVEMBER 14, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

James Joseph Ilijevich for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Upon *Alford* pleas, the circuit court convicted Daniel A. Martinez-Nolasco for attempted

murder and first-degree murder. *See North Carolina v. Alford*, 400 U.S. 25 (1970). Before

sentencing, Martinez-Nolasco moved to withdraw his pleas. The circuit court denied the motion to

withdraw the pleas and sentenced Martinez-Nolasco to 80 years of imprisonment with 31 years

suspended. Martinez-Nolasco maintains that the circuit court erred in denying his motion to

withdraw his pleas. We affirm the judgment of the circuit court.

BACKGROUND

"On appeal, we view the record in the light most favorable to the Commonwealth

because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230

(2020).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

In December 2018, Martinez-Nolasco lived with his family, including his sister, Maria Delmy Martinez-Nolasco ("Maria Delmy"), and his girlfriend, Maria Ester Machado ("Machado"). Machado was pregnant with Martinez-Nolasco's child, and Martinez-Nolasco had been "increasingly jealous and obsessive" over Machado. During this time, Maria Delmy interposed herself in Martinez-Nolasco's behavior toward Machado, told him to leave Machado alone, and criticized him for not contributing to the household financially.

On the morning of December 10, 2018, Martinez-Nolasco argued first with Machado, then shortly after, with Maria Delmy. After arguing with Maria Delmy, Martinez-Nolasco went upstairs to shower. Machado observed that "he made his anger known" by "thumping around in the shower." Martinez-Nolasco returned downstairs and continued the argument with Maria Delmy. While she looked down at her phone, Martinez-Nolasco approached her from behind and stabbed Maria Delmy in the back multiple times. She died from the wounds he inflicted. Martinez-Nolasco then attacked Machado and stabbed her multiple times. A family member intervened, but Machado sustained significant injuries in the attack. Martinez-Nolasco fled the home, and police arrested him later that day.

Detective A. Tittle, a Spanish-speaking officer, interviewed Martinez-Nolasco upon his arrest.[1] Martinez-Nolasco told Detective Tittle that he "lost control" during his argument with Maria Delmy and that "[his] mind was blank" when he attacked her.

A Fredericksburg grand jury indicted Martinez-Nolasco for attempted murder, first-degree murder, and malicious wounding. Following indictment, defense counsel moved for a competency evaluation, which the circuit court granted.[2] Dr. Jeremy Walden evaluated

---

[1] Martinez-Nolasco's first language is Spanish.

[2] The circuit court also granted the defense motion for a sanity evaluation.

Martinez-Nolasco, with a Spanish interpreter assisting by phone, and reported that Martinez-Nolasco was competent to stand trial.

Several months later, the circuit court ordered a second competency evaluation to be performed using an in-person Spanish interpreter. Dr. Nicole A. Surething, a licensed clinical psychologist, examined Martinez-Nolasco and submitted to the court her final report. Surething concluded that Martinez-Nolasco was competent to stand trial, that his claimed memory loss was inconsistent with any known neurocognitive disorder, and that there was a high probability that he was feigning incompetency.

During a second competency hearing held about one month after submitting her report, Surething maintained that Martinez-Nolasco was competent to stand trial, though she acknowledged that her examination was shorter than her typical interviews.[3] Following the competency hearing and pursuant to a request by Martinez-Nolasco's counsel, the circuit court committed Martinez-Nolasco to Western State Hospital for a third competency evaluation. Evaluators at Western State Hospital observed Martinez-Nolasco and reported to the court that Martinez-Nolasco was competent to stand trial.[4]

---

[3] Surething testified that her interview with Martinez-Nolasco lasted for approximately thirty-five minutes, compared to her typical interview length of one hour. Surething testified that Martinez-Nolasco's self-reported inability to understand specific words in her questioning made further questioning difficult.

[4] The report stated:

> [T]he available information from both outpatient evaluations, observations of his behavior at the jail and [Western State Hospital], results of psychological testing, and his presentation during the current evaluation all suggest that Mr. Martinez-Nolasco is not currently suffering from any psychiatric disorder or cognitive deficits, but rather that his self-reported memory impairments are feigned.

Martinez-Nolasco and the Commonwealth reached a plea agreement on December 23, 2020. The agreement provided for Martinez-Nolasco to plead guilty to first-degree murder and attempted murder and for the Commonwealth to nolle prosequi the malicious wounding charge. The agreement also provided that Martinez-Nolasco's total active sentence would not exceed 50 years of imprisonment.

The circuit court then conducted a plea hearing. At the hearing, Martinez-Nolasco said that he understood the plea agreement, but that there "[we]re a few things" he wanted "to know more about." He affirmed that, prior to the hearing, he conferred with his attorneys to "fully understand all of the terms and conditions contained" in the agreement. Nonetheless, the circuit court recessed the hearing to allow Martinez-Nolasco more time to confer with counsel about the plea agreement. Upon return from the recess, Martinez-Nolasco affirmed that he was ready to proceed with entering his pleas. During the plea colloquy with the circuit court that followed, Martinez-Nolasco acknowledged that he understood the charges against him, that his pleas could result in deportation, that he had discussed any possible defenses with his attorneys, that he decided on his own to plead, and that he entered the pleas of his own free will and voluntarily. The Commonwealth proffered the evidence it would have presented had the matter gone to trial, and Martinez-Nolasco accepted the Commonwealth's proffer.

After the Commonwealth's proffer, the circuit court asked Martinez-Nolasco if he understood the evidence against him. He replied, "I don't remember exactly what happened, because at that time, my mind was not working properly." He acknowledged that by his pleas he waived his right to a jury trial, his privilege against self-incrimination, and the right to confront the evidence against him. Martinez-Nolasco affirmed that he was not forced to plead and that he did not receive a promise of leniency in return for his pleas. After finishing the plea colloquy, the circuit court accepted Martinez-Nolasco's pleas.

Before sentencing, Martinez-Nolasco's court-appointed attorneys moved to withdraw. The circuit court granted the requests and appointed different counsel. Through his new counsel, Martinez-Nolasco moved to withdraw his *Alford* pleas. Martinez-Nolasco argued that he was unable "to enter his plea[s] with the requisite intent." He maintained that "due to his mental state, he was unable to assess the situation with which he was faced" at the plea hearing.

The circuit court ordered a fourth competency evaluation. Evaluators at Western State Hospital concluded that Martinez-Nolasco was "not suffering from a major mental illness or cognitive deficit that would cause impairment in his competence-related abilities . . . ." Thus, the evaluators found that he "currently possesse[s] the skills required for adjudicative competence and could assist in his own defense *if he chooses to do so*."[5]

At the hearing on his motion to withdraw his pleas, Martinez-Nolasco asserted that his "mental health history" in the case and inability to recall the commission of the crimes showed that he should be permitted to withdraw his pleas. He further argued that the plea colloquy demonstrated his lack of understanding of the proceedings. Martinez-Nolasco acknowledged that he was not "ill advised by his counsel or that his counsel did anything that induced him to enter into the plea agreement." The circuit court found that Martinez-Nolasco failed to meet his burden to prove that he was entitled to withdraw his pleas and thus denied the motion. This appeal followed.

ANALYSIS

Martinez-Nolasco contends that the circuit court erred in denying his motion to withdraw his *Alford* pleas. He claims that the record shows he "had difficulty understanding the plea colloquy"

---

[5] The evaluators noted that "the pattern of his behavior and lack of engagement with staff, but thoughtful engagement with peers and staff at an outside hospital, displayed during the current hospitalization are again more consistent with poor effort or attempts to feign symptoms or deficits rather than true deficits . . . ."

and that after the pleas he "displayed memory deficits which rendered him subject to psychological examination." Martinez-Nolasco argues that "there [wa]s no evidence that [he] was acting in bad faith." He also asserts that "there was no evidence that the Commonwealth would have been prejudiced" if his motion to withdraw his pleas was granted.

In the context of a motion to withdraw a plea, there is no meaningful difference between a guilty plea and an *Alford* plea. *See Zigta v. Commonwealth*, 38 Va. App. 149, 153 (2002). The decision whether to allow a defendant to withdraw his plea "rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case." *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). We review this decision for an abuse of discretion and will reverse the circuit court "only upon 'clear evidence that [the ruling] was not judicially sound.'" *Id.* (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Holland v. Commonwealth*, ___ Va. App. ___, ___ (Oct. 24, 2023) (quoting *Hernandez v. Commonwealth*, 67 Va. App. 67, 69 (2016)).

The defendant "has the burden of proof on his motion to withdraw his guilty plea." *Velazquez v. Commonwealth*, 292 Va. 603, 616 (2016). "[A] motion to withdraw a guilty plea made prior to sentencing should only be granted if a two-part test is satisfied: first, that the motion is made in good faith, and second, the defense advanced in support of the motion is reasonable and not merely dilatory or formal." *Branch v. Commonwealth*, 60 Va. App. 540, 546 (2012) (articulating the *Parris* standard).

In addition, the circuit court may properly deny the motion if "the equities favoring the motion are outweighed by undue prejudice to the Commonwealth." *Holland*, ___ Va. App. at ___. Where there is a plea agreement involving reduced, nolle prosequied, or dismissed charges, granting the motion is more likely to result in prejudice to the Commonwealth. *See Thomason v.*

- 6 -

*Commonwealth*, 69 Va. App. 89, 97-98 (2018) (affirming the circuit court's finding of prejudice where the Commonwealth reduced and nolle prosequied charges in reliance on the guilty plea).

Under the first prong of the *Parris* standard, a defendant can show good faith by showing that he "would not have pled guilty but for some external circumstance such as coercion, or poor or erroneous advice from counsel." *Pritchett v. Commonwealth*, 61 Va. App. 777, 788 (2013). A circuit court should grant a motion to withdraw that is made before sentencing if there is good cause to believe that "it was entered by mistake or under a misconception of the nature of the charge . . . ." *Bottoms v. Commonwealth*, 281 Va. 23, 34 (2011) (quoting *Parris*, 189 Va. at 325). "The good faith requirement 'protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court . . . .'" *Hubbard v. Commonwealth*, 60 Va. App. 200, 208 (2012) (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)).

As for the second prong of the *Parris* standard, "[a] reasonable defense sufficient to withdraw a guilty plea is 'one based upon a proposition of law or one supported by credible testimony, supported by affidavit.'" *Ramsey v. Commonwealth*, 65 Va. App. 593, 602 (2015) (quoting *Williams v. Commonwealth*, 59 Va. App. 238, 249 (2011)). "The reasonable defense 'requirement defeats motions to withdraw which would result in an essentially futile trial.'" *Holland*, ___ Va. App. at ___ (quoting *Cobbins*, 53 Va. App. at 34). The defendant bears the burden to establish a reasonable defense. *Id.* at ___. "[A] prima facie showing of a reasonable defense to the charge . . . is all that [i]s required to meet this prong." *Id.* at ___.

Each prong of the *Parris* standard must be met. Here, regardless of whether Martinez-Nolasco demonstrated that his motion to withdraw was made in good faith, he did not establish a reasonable defense to the charges. Martinez-Nolasco claims that he does not remember the offenses and points to his statement during his plea colloquy that "at that time, [his] mind was not working properly." But those claims are not supported by *proofs*, an important part of

Martinez-Nolasco's burden. *See Holland*, ___Va. App. at ___ (recognizing that "'[i]t is not enough for a defendant to merely assert' . . . 'rather, the assertions must be "sustained by proofs"'" (quoting *DeLuca v. Commonwealth*, 73 Va. App. 567, 579 (2021)). The only proofs before the circuit court regarding his mental state addressed his competency to stand trial.

In support of his motion, Martinez-Nolasco also refers to the Commonwealth's evidence that he was angry and jealous when he attacked the victims. Those facts do not constitute a reasonable defense "based upon a proposition of law . . . ." *Ramsey*, 65 Va. App. at 602. Mere allegations of anger and jealousy, without more, do not constitute a defense to first-degree murder. Given the proffered facts, Martinez-Nolasco did not meet his burden to prove that he has a defense to the charges against him, such that trying the case would not be futile, *Holland*, ___ Va. App. at ___, or that "it [would be] reasonable to present [the defense] to the judge or jury trying the case," *Spencer*, 68 Va. App. at 189 (quoting *Hernandez*, 67 Va. App. at 79). Thus, the circuit court did not err in finding that Martinez-Nolasco failed to meet his burden to show that he was entitled to withdraw his *Alford* pleas and it did not abuse its discretion by denying the motion.[6]

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*

---

[6] Because we find Martinez-Nolasco failed to advance a reasonable defense, we do not need to consider the factors of good faith and prejudice. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).